## Eisenbach Estate

*Jenkins & Ligi*, for petitioner.

*Emanuel Laster*, for respondent.

BRADY, P. J., November 20, 1953. — Petitioner S. Maurice Eisenbach, one of the seven surviving children of decedent, Solomon Eisenbach, petitioned for a citation directed against his brother, Martin Eisenbach, administrator of their father's estate, to show cause why he should not file an account. The petition was filed November 17, 1952. In answer, the administrator averred a family agreement and laches. . . .

### Findings of Fact

1. Decedent, Solomon Eisenbach, dying intestate April 22, 1933, left to survive him the following heirs: His spouse, Regina, and seven children, namely, Isadore, Maurice (petitioner), Martin (respondent), Pearl, Irma, Harry and Paul. The two latter named children were at the time minors, aged 16 and 13, respectively.

2. The deceased was a Hebrew Orthodox rabbi. Immediately after the funeral services, the family gathered in the home to sit and offer the prayers for the dead. Isadore was not present, he being a resident of Argentina, South America. During this solemn oc-

casion a family discussion was had by the six children in the presence of their mother, resulting in their unanimous agreement to give all the money "left over" in the estate of their father to their mother.

3. After the year of mourning had passed, Martin Eisenbach, on May 8, 1934, petitioned for and was granted letters on his father's estate, his mother having renounced in his favor. The same day Martin, as administrator, with intent and in order to effect the past informal gift of his brothers and sisters to their mother, closed out the bank accounts of the deceased father. The accounts were no. S-112717 in the amount of $5,-130.80 and a checking account in the amount of $225.20 opened in the First National Bank of Scranton, Pa. He transferred the credit on account no. S-112717 to the active account of Regina Eisenbach, the mother, in the same bank; and the proceeds of the checking account he gave to his mother.

4. The above assets comprised the entire estate and were the same as shown by the inventory subsequently filed by Martin Eisenbach, administrator, on May 23, 1934. No rights of creditors were then or are now involved.

5. In 1935 Regina Eisenbach and two of her children, Irma and Paul, migrated to Jerusalem, Palestine. Shortly thereafter she remarried and lived in Palestine until her death in 1950. After but a short stay, Paul Eisenbach returned to this country, to reside with Martin Eisenbach and attend school.

6. As to the bank account of the mother (finding no. 3), though active prior to and after the credit of $5,130.80 on May 8, 1934, its balance was gradually reduced and finally depleted by a draft of $1,000 on October 20, 1937.

7. During the years following the father's death, the brothers and sisters visited and corresponded with each

other and were apparently concerned with their mother's well being to the day of her death. No demand for an accounting by any of the children and apparently none by the mother was made on Martin Eisenbach as administrator until this instant proceeding which followed a letter demand from petitioner's attorney dated September 15, 1952.

8. Paul Eisenbach, though a minor (13 years) at the time of the family agreement, reached his majority in 1941. He never revoked the agreement and but recently disaffirms that such agreement as found ever existed.

### Discussion

In light of the circumstances, and particularly the family background, and the apparent close feeling among the children up to the death of their mother in 1950, in whose welfare all were concerned, the testimony of petitioner and Paul Eisenbach is incredible. Is it that memories dimmed since the mother's death? Did her death break the family bond?

The agreement as found was virtually in effect an informal gift, yet solemnly intended by each of the participating children, of his or her respective interest in the personal estate of their deceased father to their living mother. The administrator but perfected the donors' beneficence. The gifts ought to be remembered. The donee did not demand an account.

Does petitioner have a right to an accounting? He gave his interest in the estate to his mother: Price's Estate, 9 Dist. R., 511.

The question of laches or as to the statute of limitations need not be discussed. Any interest of Isadore Eisenbach in the estate is not at issue.

### Conclusions

1. Petitioner's interest in his father's estate was given by petitioner to his mother. The informal yet

solemn beneficence was effectively completed by the administrator.

2. Petitioner, having neither present nor future interest in the estate of Solomon Eisenbach, deceased, has no right to demand an account.